UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
STONEWELL CORP., and RICHARD GLADSTONE,

                 Plaintiffs,


      -against-               04 CV 9867 (KMW)(GWG)

CONESTOGA TITLE INSURANCE CO.,     <u>OPINION AND ORDER</u>
WILLIAM KOLSHORN, and JERSEYSEARCH  <u>ON THIRD-PARTY</u>
TITLE SERVICES, INC.,            <u>DEFENDANTS' MOTION</u>
                              <u>FOR SUMMARY JUDGMENT</u>
                 Defendants.
-----------------------------------X
     - as consolidated with -
-----------------------------------X
CONESTOGA TITLE INSURANCE CO.,
WILLIAM KOLSHORN, and JERSEYSEARCH
TITLE SERVICES, INC.,

                 Plaintiffs,


      -against-

STONEWELL CORP., RICHARD GLADSTONE,

                 Defendants/
                 Third-Party Plaintiffs,


      -against-

JERSEYSEARCH TITLE SERVICES, INC.,
WILLIAM KOLSHORN, DOLLINGER GONSKI &
GROSSMAN, AND MATTHEW DOLLINGER,

                 Third-Party Defendants.
-----------------------------------X
KIMBA M. WOOD, U.S.D.J.:

## I. Introduction

    A jury trial is scheduled in the above-captioned cases for

January 26, 2010. Third-Party Defendants Matthew Dollinger and

Dollinger, Gonski, & Grossman (hereinafter "Dollinger") have

moved for summary judgment with respect to all claims asserted by Stonewell and Gladstone (collectively, "Stonewell") in their Third-Party Complaint. (Docket Entry ("DE") 36.)

Stonewell asserts three separate claims alleging that Dollinger committed legal malpractice while representing Stonewell in proceedings related to Stonewell's purported property rights over a Center Point Mall property in New Jersey. First, Stonewell claims that Dollinger committed legal malpractice by: (1) advising Stonewell to pursue certain legal actions, including filing an "innocent owner" petition pursuant to 18 U.S.C § 1963(l) in the Middle District of Florida; (2) failing to advise Stonewell of the risks of taking such legal actions; (3) advising Stonewell to stay related proceedings in the Southern District of New York; and (4) failing to advise Stonewell of or otherwise address an alleged conflict of interest with respect to a second "innocent owner" petition in light of Dollinger's relationship with Conestoga Title Insurance Company (hereinafter "Conestoga").[1]

Second, Stonewell alleges that Dollinger failed to convey a settlement offer related to the claims and counter-claims between Conestoga and Stonewell that are pending in this

---

[1] Implicit in this claim is that Dollinger's legal representation caused an adverse legal outcome – to wit, a binding decision that Stonewell was not a bona fide purchaser or rightful owner of the Center Point Mall property – that would not have occurred if competent representation had been provided.

litigation.  Third, Stonewell claims that Dollinger failed to cooperate with and produce litigation documents to Stonewell's counsel upon request.

Dollinger argues that summary judgment is warranted with respect to Stonewell's legal malpractice claim on the grounds that: (1) Dollinger had a continuing duty to inform the court in the Southern District of New York of any developments that may impact adjudication of the case, including the status of related Florida forfeiture proceedings; (2) any errors in professional judgment committed by Dollinger do not rise to the level of malpractice; (3) Stonewell has failed to establish that any negligent conduct by Dollinger proximately caused the alleged injury; and (4) the advice given with respect to filing the "innocent owner" petition in the Florida district court was appropriate.

Dollinger also contends that the Court should grant summary judgment on Stonewell's other claims.  Dollinger argues that there is no evidence that Conestoga made a settlement offer and thus no viable claim that Dollinger failed to communicate such an offer to Stonewell.  With respect to the third cause of action, Dollinger submits that Stonewell fails to allege any injury or to identify a proper claim for relief stemming from Dollinger's purported failure to provide documents and otherwise assist Stonewell.

For the reasons stated below, the Court GRANTS Dollinger's
motion for summary judgment with respect to its first and third
claims.  The motion for summary judgment is DENIED with respect
to Stonewell's second claim.

**II.   Factual and Procedural Background**

This litigation has a complex factual and procedural
background is set forth in the Court's Opinion and Order, dated
September 24, 2009, and several decisions issued by the district
court of the Middle District of Florida and the Court of Appeals
for the Eleventh Circuit.  The Court reviews those facts that
bear on adjudication of the instant motion for summary judgment.

In 1997, Stonewell Corporation, a corporation whose sole
shareholder, officer, and director is Richard J. Gladstone,
sought to purchase a mortgage on a property located at the
Center Point Mall in New Jersey.  Stonewell contacted Conestoga,
a business engaged in providing title insurance, in an effort to
secure such insurance for the mortgage.

Conestoga arranged for William Kolshorn and Jerseysearch
Title Services, Inc. to conduct a title search of the Center
Point Mall and to assess whether title to the property had any
defects, liens, or encumbrances.  Kolshorn and Jerseysearch
Title Services, Inc. discovered but did not disclose a title
impediment in the form of a <u>lis</u> <u>pendens</u>, that is, a notice that
the property was the subject of pending litigation.  Stonewell

subsequently sought to purchase the title to the Center Point Mall property. On March 24, 1997, Conestoga issued a mortgage policy to Stonewell with respect to that title. The policy insured up to $4,000,000 against loss or damage arising from particular defects in Stonewell's claim of title. The mortgage policy provided that Stonewell could request that Conestoga fund its legal fees in defense against third-party claims adverse to Stonewell's title interest, with some enumerated exceptions.

Shortly before Stonewell's attempted purchase of the mortgage policy, several legal proceedings were initiated that stood to impact Stonewell's alleged title to the Center Point Mall property. In 1996, the Insurance Commissioner for the State of Delaware, Donna Lee H. Williams, brought a lawsuit in the Southern District of New York against the officers of the Heritage Life Insurance Company ("Heritage Life"). See Williams v. LPDA Acquisition Corp., et al. (the "Williams Action"), 96 Civ. 3079. Williams, the acting bankruptcy receiver for Heritage Life, claimed that officers of Heritage Life had stolen money from the company and used it to purchase the Center Point Mall in New Jersey. She sought to obtain title to the Center Point Mall property, sell the property, and provide proceeds from the sale to the defrauded company.

Stonewell sought to establish the validity and priority of its title to the Center Point Mall mortgage in the Williams

action.  On November 17, 1997, Stonewell notified Conestoga of the status of the Williams proceedings.  On November 25, 1997, Conestoga responded by letter that it agreed to fund Stonewell's legal defense in the Williams action and included a general reservation of rights.  Conestoga retained Matthew Dollinger, an attorney at Dollinger, Gonski, & Grossman, to represent Stonewell's interests.  A trial took place in early 1998, and the parties awaited any further proceedings and a decision from the district court.

On April 29, 1998, some Heritage Life officers, including Sholam Weiss, were indicted in the Middle District of Florida for looting and defrauding Heritage Life.  Following a jury trial, Weiss was convicted of violating the Racketeer Influenced and Corrupt Organizations Act.  See United States v. Weiss, 98-cr-99-Orl-19 (the "Weiss Action").  The jury returned a special verdict of forfeiture against Weiss, finding that Weiss's alleged interest in a number of assets, including Stonewell Corporation and the Center Point Mall property, should be forfeited.[2]  On February 4, 2000, the Florida district court entered a Preliminary Order of Forfeiture, through which Weiss would forfeit title to his interests in Stonewell and the Center Point Mall property to the United States.  On April 2, 2000,

_____

[2] As discussed below, the Florida district court ultimately determined that Weiss did not possess an interest in Stonewell Corporation and that Stonewell Corporation was therefore not subject to forfeiture.

Dollinger advised the court presiding over the <u>Williams</u> action in the Southern District of New York of the Florida district court's Preliminary Order of Forfeiture and requested an interim stay pending the outcome of the Florida proceedings.  The <u>Williams</u> court granted Stonewell's motion for an interim stay.

On or about April 5, 2000, Dollinger, acting on behalf of Gladstone, submitted an "innocent owner" petition pursuant to 18 U.S.C § 1963(1) in the district court in the Middle District of Florida.  In the petition, Gladstone asserted that he had full and complete right, title, and interest in Stonewell, and that Stonewell was a bona fide purchaser for value and rightful owner of the Center Point Mall property.[3]

Gladstone then filed a motion for summary judgment on his claim of ownership to Stonewell, which was denied by the Florida district court.  Following extensive evidentiary proceedings, the magistrate judge in the Middle District of Florida recommended that the district court find that Gladstone had sustained his burden of proof with respect to his ownership of Stonewell but had not established his or Stonewell's ownership of the Center Point Mall mortgage.  On October 29, 2002, the district court adopted the substantive recommendations of the magistrate judge, finding, <u>inter alia</u>, that (1) Weiss had no

---

[3] Gladstone, and not Conestoga, retained Dollinger as counsel and paid Dollinger's legal fees in the proceedings relating to this petition.

ownership interest in Stonewell, (2) Gladstone had participated in a "scam" with Weiss to shield the Center Point Mall mortgage from government forfeiture, and (3) Stonewell had no ownership interest in the Center Point Mall mortgage.

Gladstone appealed the district court's finding that the United States Government was entitled to possession, title, and control of the Center Point Mall mortgage. On April 15, 2004, the Court of Appeals for the Eleventh Circuit affirmed the district court's conclusion that Gladstone and Stonewell never owned the Center Point Mall mortgage. It reversed and vacated the portion of the district court's order that forfeited the mortgage to the United States Government based on a jurisdictional and procedural defect. On remand, the government sought to correct the jurisdictional deficiency through a motion for a Second Amended Preliminary Order of Forfeiture that would require Weiss to forfeit his interest in the Center Point Mall mortgage. On July 20, 2004, the district court granted the motion and issued the Amended Forfeiture Order.

Dollinger, as counsel for Stonewell, sought to contest the Amended Forfeiture Order. Upon Dollinger's request, made on Stonewell's behalf, Conestoga agreed to fund this legal action and Dollinger's continued legal representation. On August 18, 2004, Stonewell filed a petition that challenged the Amended Forfeiture Order on the ground that Stonewell owned the Center

Point Mall property.  The district court for the Middle District

of Florida dismissed the petition on May 6, 2005.  On October

18, 2006, Stonewell's appeal was dismissed by the Court of

Appeals for the Eleventh Circuit.  The appellate court held that

Stonewell was collaterally estopped from relitigating the

affirmed October 2002 district court decision that Stonewell did

not own an interest in the Center Point Mall property.

Stonewell's petitions for a rehearing en banc and for a writ of

certiorari were both denied.

     In the action now before this Court, Stonewell seeks a

judgment requiring Conestoga to provide full coverage under the

terms of the title insurance policy.  Conestoga has filed

counter-claims against Stonewell and Gladstone.  It seeks a

declaratory judgment that the title insurance policy is void as

well as damages based on Stonewell's allegedly fraudulent

representations with respect to its ownership interest in the

Center Point Mall.[4]  Stonewell's Third-Party Complaint against

Dollinger, filed on March 18, 2008, is the subject of the

instant Opinion and Order.

---

[4] In its Opinion and Order, dated September 24, 2009 (DE 88), this
Court denied the cross-motions for summary judgment submitted by
Conestoga and by Stonewell and Gladstone, finding that there is a
genuine issue of material fact as to whether Conestoga waived its
right to deny coverage under the insurance policy.  This Court granted
the motion for summary judgment filed by defendants Kolshorn and
Jerseysearch Title Services, Inc., finding that any failure to
disclose the lis pendens on the property did not cause the injury
claimed by Stonewell and Gladstone.

## III. Discussion

### A. Standard of Review on Motion for Summary Judgment

Summary judgment is appropriate only if the record before the court establishes that there is no "genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 178-79 (2d Cir. 2008); see also Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); Fed. R. Civ. P. 56(e). The Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir. 2008).

The non-moving party, however, may not rely on "conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and must demonstrate that there is "significant, probative evidence" on

which a reasonable factfinder could decide in its favor.
Anderson, 477 U.S. at 247-48.

**B. Claim for Legal Malpractice**

1. Legal Standard

A plaintiff must establish the following elements for a
claim of legal malpractice under New York State law: (1) an
attorney-client relationship, (2) attorney negligence (3) that
is the proximate cause of a loss, and (4) actual damages.  See
Allianz Ins. Co. v. Lerner, 416 F.3d 109, 118 (2d Cir. 2005);
Estate of Re v. Kornstein Veisz & Wexler, 958 F. Supp. 907, 920
(S.D.N.Y. 1997).  To succeed on a motion for summary judgment in
a legal malpractice action, the defendant must establish that
the plaintiff cannot prove at least one of these essential
elements.  See Rubens v. Mason, 527 F.3d 252, 255 (2d Cir.
2008); Carney v. Philippone, 332 F.3d 163, 167 (2d Cir. 2003).

To find negligence, a court must find sufficient evidence
that the defendant-attorney's conduct "fell below the ordinary
and reasonable skill and knowledge commonly possessed by a
member of his profession."  Achtman v. Kirby, McInerney &
Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (quoting Grago v.
Robertson, 370 N.Y.S. 2d 255 (N.Y. 1975)).  If the pleadings and
evidence indicate no more than an "error of judgment" or a
"selection of one among several reasonable courses of action,"
dismissal of the claims is warranted.  Rosner v. Paley, 481 N.E.

2d 553, 554 (N.Y. 1985); see also Nobile v. Schwartz, 265 F.

Supp. 2d 282, 288 (S.D.N.Y. 2003) (noting that a plaintiff must

show that the attorney "failed to exercise that degree of care,

skill and diligence commonly possessed and exercised by a member

of the legal community").

Common examples of circumstances for which an attorney may

be held liable include "ignorance of the rules of practice,

failure to comply with conditions precedent to suit, or . . .

neglect to prosecute or defend an action." Hatfield v. Herz,

109 F. Supp. 2d 174, 180 (S.D.N.Y. 2000) (quoting Bernstein v.

Oppenheim & Co., 554 N.Y.S. 2d 487, 489-90 (1st Dep't 1990))

Allegations that amount to nothing more than a "dissatisfaction

with strategic choices" will not support a malpractice claim as

a matter of law. Bernstein, 554 N.Y.S. 2d at 490.

Expert testimony is sometimes required to establish the

standard of care in the legal profession, whether the defendant-

attorney failed to comply with that standard, and whether the

negligence proximately caused any injury to the plaintiff-

client. See Kranis v. Scott, 178 F. Supp. 2d 330, 334 (E.D.N.Y.

2002); Hatfield, 109 F. Supp. 2d at 179. Yet, expert testimony

may be deemed unnecessary where "the ordinary experience of the

fact finder provides sufficient basis for judging the adequacy

of the professional service." Nobile, 265 F. Supp. 2d at 288.

Where it is apparent that the attorney exercised reasonable

judgment as to how to proceed, or where the client cannot
establish another requisite element of the claim as a matter of
law, summary judgment should be granted.  See Iannacone v.
Weidman, 708 N.Y.S. 2d 723, 724 (2d Dep't 2000); Rubinberg v.
Walker, 676 N.Y.S. 2d 149, 150 (1st Dep't 1998).

To establish the elements of proximate cause and actual
damages for a claim of legal malpractice, the plaintiff must
show that "but for the attorney's negligence, what would have
been a favorable outcome was an unfavorable outcome."  Zarin v.
Reid & Priest, 585 N.Y.S. 2d 379, 381 (1st Dep't 1992); see also
Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills,
Inc., 780 N.Y.S. 2d 593, 596 (1st Dep't 2004) ("[T]o establish
the elements of proximate cause and actual damages, ... the
client must meet a 'case within the case' requirement,
demonstrating that 'but for' the attorney's conduct the client
would have prevailed in the underlying matter or would not have
sustained any ascertainable damages.").

2. Application of Legal Standard to Facts

The Court finds that Stonewell has failed to establish a
genuine dispute of material fact with respect to Dollinger's
alleged negligence, causation, and damages.  Summary judgment in
favor of Dollinger is warranted.

a. First "Innocent Owner" Petition in Weiss Proceedings

13

There is no evidence that Dollinger's legal representation with respect to the first "innocent owner" petition, filed in April 2000, fell below the level of ordinary and reasonable skill, knowledge, and conduct expected of an attorney in his position.  Upon issuance of the Preliminary Order of Forfeiture by the district court in the Middle District of Florida in February 2000, Dollinger advised Stonewell of the importance of expeditiously filing an "innocent owner" petition pursuant to 18 U.S.C. § 1963(l).  Absent such action within thirty days of publication of the notice of the Preliminary Order of Forfeiture or receipt of such notice, the federal government could automatically obtain "clear title to [the] property that is the subject of the order of forfeiture."  18 U.S.C. § 1963(l)(2) & (7); see also United States v. Gilbert, 244 F.3d 888, 910 (11th Cir. 2001) ("[T]he property rights of third-parties who do not file petitions in the ancillary proceeding are automatically extinguished.").

At risk in the Florida proceedings were not only Stonewell's ownership interest in the Center Point Mall property but also Gladstone's interest in the Stonewell Corporation, which was itself subject to the Preliminary Order of Forfeiture. Dollinger recognized the urgency of filing the petition in the Middle District of Florida as well as the prospective legal complications related to proceeding in the Williams action while

the status of Stonewell remained in question.  Dollinger's

advice and assistance with respect to filing the petition was

prudent and reasonable.  In fact, a <u>failure</u> to take such steps

in response to the Preliminary Order of Forfeiture would have

potentially constituted negligence and exposed Dollinger to

legal malpractice liability.  There is also no evidence that

Dollinger failed to advise Stonewell of any risks of pursuing

the first "innocent owner" petition, which in any event did not

outweigh the need to file such a petition to protect Stonewell's

rights with respect to the <u>Weiss</u> forfeiture proceedings.

The Court is not persuaded by Stonewell's contention that

Dollinger was negligent in advising Stonewell to proceed in the

"bias[ed] forum" of the Middle District of Florida instead of

the more "impartial" forum of the New York district court.  (<u>See</u>

Pl. Resp. at 10, 13, DE 126.)  The Court will not endorse the

view that some district courts are "biased" while others are

"impartial," and that an attorney's duty to a client includes

determining whether or not a court is "biased."  The appropriate

inquiry is whether the defendant-attorney exercised a "degree of

care, skill and diligence commonly possessed and exercised by a

member of the legal community."  <u>Nobile</u>, 265 F. Supp. 2d at 288.

Based upon the record before the Court, Dollinger met the

requisite standard of care and conduct in pursuing the first "innocent owner" petition.[5]

> ### b. *Decision to Notify New York Court and Seek a Stay*

The Court finds that Dollinger's decision to notify the court in the Southern District of New York of the status of the Florida proceedings and to request an interim stay pending decision on the first "innocent owner" petition in Florida satisfies the basic standards of legal practice. It is undisputed that the Florida and New York courts <u>both</u> had jurisdiction over the issue of whether Stonewell was a bona fide purchaser of the Center Point Mall property, a legal matter that would essentially determine the validity of Stonewell's title. See <u>United States v. Weiss</u>, 467 F.3d 1300, 1307 (11th Cir. 2006) (holding that the Florida district court had jurisdiction over the criminal forfeiture proceeding pursuant to 18 U.S.C. § 3231,

---

[5] Stonewell's reliance on <u>Rubens v. Mason</u>, 527 F.3d 252 (2d Cir. 2008), is without merit. In <u>Rubens</u>, the Court of Appeals for the Second Circuit vacated the district court's granting of defendant's motion for summary judgment in a legal malpractice suit, holding that one alleged act – the attorney's decision not to present an expert witness in an arbitration proceeding – may have constituted negligence. In a highly fact-specific analysis, the appellate court noted that, under some circumstances, "[d]etermining whether [the attorney's] alleged failures were negligent or merely reasonable tactical decisions present[] a question of fact that [can]not be resolved on summary judgment." <u>Rubens</u>, 527 F.3d at 254 (quoting <u>Rubens v. Mason</u>, 387 F.3d 183, 190 (2d Cir. 2004)). In the instant case, the Court must engage in its own fact-specific analysis to determine whether there is a disputed issue of fact as to whether Dollinger's conduct was negligent or proximately caused any damages to Stonewell. See <u>Rubens</u>, 527 F.3d at 255; <u>Wester</u>, 757 N.Y.S. 2d at 501.

while the New York district court had diversity jurisdiction over the <u>Williams</u> action pursuant to 28 U.S.C. § 1332).

Given the highly complex and substantively overlapping legal proceedings touching upon the validity of Stonewell's purported title to the Center Point Mall property at the time, there was no clearly superior legal strategy for Stonewell. It was reasonable for Dollinger to inform the <u>Williams</u> court about the Florida proceedings and to seek an interim stay in the Southern District of New York. The <u>Williams</u> court itself agreed with Dollinger's assessment of the situation in granting the interim stay. The record does not indicate that Dollinger's decision to give priority to the litigation in the Florida district court by filing the "innocent owner" petition there, and to seek the interim stay of the <u>Williams</u> action, constituted anything less than competent legal representation under difficult circumstances. Where a claim of legal malpractice is based upon a plaintiff's displeasure, developed only with the benefit of hindsight, regarding a defendant-attorney's selection of one among several reasonable strategic options, summary judgment should be granted in defendant's favor. <u>See</u> <u>Rosner</u>, 481 N.E. 2d at 554; <u>Bernstein</u>, 554 N.Y.S. 2d at 490.

c. *Alleged Conflict of Interest*

Stonewell contends that an alleged undisclosed conflict of interest, stemming from Dollinger's relationship with Conestoga

in the course of the litigations involving the Center Point Mall property, creates a genuine issue of material fact with respect to its claim for legal malpractice. Based on the Court's careful review of Dollinger's legal representation and the facts and circumstances of these litigations, the Court concludes that this argument is without merit.

A "conflict of interest, even if a violation of the Code of Professional Responsibility, does not by itself support a legal malpractice cause of action." Sumo Container Station, Inc. v. Evans, Orr, Pacelli, Norton & Laffan, P.C., 278 A.D. 2d 169, 171 (1st Dep't 2000). Even if a potential conflict of interest existed, Stonewell must still establish that such a conflict caused an actual injury.[6] A failure to establish that an attorney's conduct proximately caused harm requires dismissal of the malpractice action, regardless of whether the attorney was in fact negligent. See Bauza v. Livington, 40 A.D. 3d 791, 793 (2d Dep't 2007); Leder v. Spiegel, 31 A.D. 3d 266, 268 (1st Dep't 2006); Schwartz v. Olshan Grundman Frome & Rosenzweig, 753 N.Y.S. 2d 482, 486 (1st Dep't 2003).

---

[6] The Court recognizes that a critical issue at trial with respect to the claims and counter-claims between Stonewell and Conestoga will be whether Conestoga controlled the litigation related to the filing of the second "innocent owner" petition challenging the Amended Forfeiture Order in August 2004. This unresolved question cannot by itself create a genuine issue of fact as to whether Dollinger is liable for legal malpractice. The analysis remains focused on whether Dollinger's conduct fell below the level of ordinary and reasonable skill and knowledge and, if so, whether any failure to meet that standard caused actual damages.

The Court concludes that Dollinger's legal representation with respect to both "innocent owner" petitions was reasonable and did not cause any actual damages to Stonewell.[7] The extensive record and adjudications in the Southern District of New York, the Middle District of Florida, and the Court of Appeals for the Eleventh Circuit conclusively establish that Stonewell has never possessed any ownership interest in the Center Point Mall property and mortgage. See Stonewell Corp. v. Conestoga Title Ins. Co., No. 04-9867, 2009 WL 3075661, at *6-8 (S.D.N.Y. Sept. 25, 2009); United States v. Weiss, 467 F.3d 1300, 1311 (11th Cir. 2006); United States v. Gladstone, No. 02-16844, slip op., 2004 WL 885265 (11th Cir. Apr. 15, 2004).

As discussed earlier in this Opinion and Order, Dollinger's legal representation relating to the filing of the first "innocent owner" petition in April 2000 was reasonable and appropriate given the circumstances at the time. There is also no evidence supporting Stonewell's contention that Dollinger's conduct caused any damages to Stonewell. See Fashion Boutique of Short Hills, 780 N.Y.S. 2d at 596 (requiring a showing that plaintiff incurred damages as a direct result of the attorney's actions, and that the plaintiff would have been successful in the underlying action had the attorney exercised due care);

_____

[7] The Third-Party Complaint suggests that a conflict of interest adversely affected Dollinger's legal representation relating to both petitions, resulting in actual damages. The Court therefore addresses this issue as to both petitions.

<u>Volpe v. Canfield</u>, 654 N.Y.S. 2d 160, 161 (2d Dep't 1997)

(same).  The Court rejects Stonewell's contention that the New

York court presiding over the <u>Williams</u> action would have ruled

in favor of Stonewell had that action been completed prior to

decision in the Florida forfeiture proceedings.[8]  Absent the

elements of attorney negligence, causation, and actual damages,

the purported conflict of interest is insufficient to establish

a claim for legal malpractice.

Stonewell's claim of a conflict of interest with respect to

the filing of the second "innocent owner" petition in August

2004 is also unavailing.  At the time of the second petition,

the Court of Appeals for the Eleventh Circuit had already held

that Stonewell possessed no ownership interest over the Center

Point Mall property and mortgage.  <u>See</u> <u>United States v.</u>

<u>Gladstone</u>, No. 02-16844, slip op. at 10, 2004 WL 885265 (11th

Cir. Apr. 15, 2004).  With the case remanded to the Florida

district court to finalize the forfeiture of the Center Point

Mall property, Dollinger made a wholly reasonable decision to

advise Stonewell to file the second "innocent owner" petition,

_____

[8] Stonewell's evidence that it would have prevailed in the Southern
District of New York is limited to Gladstone's statement that
Dollinger told him that the outcome in the <u>Williams</u> action "was going
to be successful to Stonewell." (<u>See</u> Gladstone Aff. ¶ 19.)  Such a
statement can be given no weight in the present analysis, particularly
given the overwhelming evidence that Stonewell had no ownership
interest over the Center Point Mall property, a finding that has been
affirmed and reaffirmed by courts in two jurisdictions.

which was a legitimate final effort (albeit a long shot) to protect Stonewell's ownership interest of the property. The Florida district court held that Stonewell was collaterally estopped from making such a claim. See United States v. Weiss, No. 698-CR-99-ORL-19, 2005 WL 1126663, at *9 (M.D. Fla. May 06, 2005), aff'd, 467 F.3d 1300 (11th Cir. 2006). No alternative course of action by Dollinger would have altered this outcome. Stonewell's contention that it would have obtained a better result had it pursued further legal proceedings in a "more independent forum" is without merit. (See Pl. Rule 56.1 Resp. ¶ 105.) The history of this litigation makes clear that Stonewell has sought every opportunity to secure ownership of the Center Point Mall property. Dollinger's legal representation was at all times reasonable in supporting this objective and cannot be said to have caused actual damages to Stonewell.

Accordingly, Stonewell has failed to demonstrate sufficient evidence for purposes of summary judgment that, "but for" Dollinger's negligent conduct relating to the purported conflict of interest, what would have been a favorable outcome was rendered unfavorable, and resulted in actual damages to Stonewell. Zarin, 585 N.Y.S. 2d at 381; Fashion Boutique of Short Hills, 780 N.Y.S. 2d at 596.

d. *Conclusion*

Stonewell has failed to establish a genuine issue of material fact with respect to whether Dollinger acted negligently by seeking to protect Stonewell's rights in the Weiss forfeiture proceedings or by obtaining a stay in the Williams action. With respect to the potential conflict of interest involving the relationship between Conestoga and Dollinger, Stonewell has failed to establish that any wrongful conduct by Dollinger caused Stonewell to suffer actual damages. Summary judgment with respect to Stonewell's legal malpractice claim is therefore warranted.

**C. Claim for Failure to Communicate Settlement Offer**

Stonewell's second cause of action is based on the allegation that Dollinger failed to communicate to Stonewell a settlement offer made by Conestoga on the claims now before this Court.

The evidentiary basis for this claim is Gladstone's affidavit, in which he states that Dollinger told him that James Black, who was counsel to the Delaware Insurance Commissioner in the Williams action and, according to Gladstone, was acting "in collaboration with Conestoga," approached Dollinger about a possible settlement of claims between Conestoga and Stonewell. (Gladstone Aff. ¶¶ 69-71.) Dollinger allegedly rejected the offer without consulting Stonewell and did not communicate the offer to Stonewell until several weeks after it was made. (Id.

¶¶ 72-74, 79-80.)  Stonewell alleges that it likely would have accepted the settlement had the offer been timely communicated by Dollinger.  (<u>Id.</u> ¶ 78.)

Dollinger counters with affidavits provided by Dollinger and Charles Y. Caldwell, III.  At all times relevant to the Third-Party Complaint, Caldwell was Vice President and Claims Counsel of Lawyers Title Insurance Corporation, the company that reinsured the Center Point Mall title policy issued by Conestoga.  Caldwell alleges that he was responsible for resolving the Stonewell title policy claims.  Caldwell asserts that, to his knowledge, no settlement offer was ever communicated to Dollinger.  (Caldwell Aff. ¶¶ 4-5.)  Dollinger denies having withheld a settlement offer from Gladstone. (Dollinger Aff. ¶¶ 45-46.)

Where there are genuine issues of material fact as to whether a defendant-attorney failed to convey a settlement offer to the plaintiff and whether the plaintiff would have accepted that offer, summary judgment is not warranted.  See <u>Boglia v. Greenberg</u>, 63 A.D. 3d 973, 975 (2d Dep't 2009); <u>Masterson v. Clark</u>, 243 A.D. 2d 411, 412 (1st Dep't 1997).  It is the burden of the moving party to demonstrate that no dispute of a material fact exists.  See <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 554 (2d Cir. 2005); <u>Fischl v. Armitage</u>, 128 F.3d 50, 56 (2d Cir. 1997).  Where decision on a claim requires assessments of

credibility or choices between conflicting versions of events, such matters are for the jury, not for the court on summary judgment.  See Jeffreys, 426 F.3d at 553-54; see also Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) (noting that, in applying the summary judgment standard, "the court should not weigh evidence or assess the credibility of witnesses").

Dollinger has failed to demonstrate that there is no material issue of fact with respect to this claim.  The relevant affidavits present competing versions of events, neither of which is supported by additional evidence.  In such a case, it is for a jury to determine which version of events should be credited.  Summary judgment is therefore not appropriate.

Adjudication of this claim is premature.  Stonewell cannot establish actual damages absent a final judgment or resolution in the still pending controversy between Conestoga and Stonewell.  It would be improper for a jury to simultaneously hear the case between Conestoga and Stonewell and a legal malpractice claim against Dollinger relating to the same Conestoga-Stonewell controversy.  The standard "case-within-a-case" scenario presented in a legal malpractice action cannot be manipulated such that the case and the "case-within-a-case" are presented together.  Such a trial would unduly and inappropriately complicate the jury's factfinding duty,

particularly as to its "but for" causation and actual damage analyses. <u>Fashion Boutique of Short Hills, Inc.</u>, 780 N.Y.S. 2d at 596; <u>Volpe</u>, 654 N.Y.S. 2d at 161; <u>see also</u> Fed. R. Evid. 408 (precluding admissibility of settlement negotiations and offers of settlement). Logic dictates that a legal malpractice claim may not be asserted until the matter on which the claim is based has been concluded.

In the interest of judicial efficiency and bringing this protracted litigation to a timely conclusion, the Court orders that Stonewell's legal malpractice claim that Dollinger failed to communicate an alleged Conestoga settlement offer shall be tried by a jury immediately following a verdict or other resolution of the Stonewell-Conestoga action, if still appropriate. The triable issue will be a narrow one: whether Dollinger was negligent by failing to communicate to Stonewell an offer of settlement proposed by Conestoga at the time alleged by Stonewell and, if so, whether such a failure proximately caused actual damages to Stonewell.

**D. Claim for Failure to Assist Counsel in this Litigation**

Stonewell's final cause of action relates to Stonewell's counsel's apparent frustrations with Dollinger's alleged failure to provide documents and other materials upon request. The alleged failure could be remedied by presentation of a motion to

compel production; no further sanction is warranted based on the record before the Court.

Dollinger's motion for summary judgment as to Stonewell's third claim is granted.

## IV.  Conclusion

For the reasons stated above, Dollinger's motion for summary judgment is GRANTED with respect to Stonewell's first and third claims.  (DE 110.)  With respect to Stonewell's claim that Dollinger's alleged failure to communicate an offer of settlement that Stonewell would have accepted if timely conveyed, summary judgment is DENIED.  A jury trial on that claim shall proceed as outlined in this Opinion and Order.


SO ORDERED.

Dated:     New York, New York
           January  7  , 2010

                              Kimba M. Wood
                              Kimba M. Wood
                              United States District Judge

26